FOSTER et al. v. CHRISTENSEN.

No. 1452—6125.

Commission of Appeals of Texas, Section B.
Jan. 24, 1934.

Cunningham, Moursund & Johnson, of San Antonio, and H. S. Bonham, W. E. Pope, and H. A. Carr, all of Corpus Christi, for plaintiffs in error.

Sidney P. Chandler, of Corpus Christi, for defendant in error.

SMEDLEY, Judge.

On April 15, 1916, W. H. Foster and his wife, Loula, conveyed to George A. Newgent and his wife, Frances F. Newgent, who was the daughter of Mr. and Mrs. Foster, certain land containing 55.6 acres in Kleberg county, Tex.; the deed reciting a cash payment of $600, the execution by the grantees of a note in the sum of $580, to be paid in yearly installments amounting each to one-fourth of the annual crops raised on the land, and the assumption of eight promissory vendor's lien notes, each in the sum of $200 theretofore executed by W. H. Foster to Theodore F. Koch. A vendor's lien was expressly retained to secure all the unpaid purchase money. The deed contained no statement that the land was intended to be the separate property of either of the grantees.

A petition in bankruptcy was filed against George A. Newgent, and he was adjudged a bankrupt on November 1, 1922. In the schedules filed by him he listed among his debts the $580 note and also a balance of $800 and interest due on the eight $200 notes above described, and among his assets he listed the above-described land. The claim of the bankrupt that the land was exempt as homestead was contested by a creditor, and after a hearing before the referee an order was entered December 31, 1923, declaring that the land was not homestead, but was subject to the payment of the claims of the creditors. This order recited that the hearing was had after notice "to the creditors and other interested parties."

On application of the trustee, an order was entered November 17, 1924, directing the trustee to sell said tract of land free of all liens at public auction after publishing notice of the sale. This order does not recite that it was entered after a hearing or pursuant to any notice. On December 9, 1924, an order was entered by the referee reciting that the trustee had reported the sale of said land in accordance with the order of sale to defendant in error Pete Christensen for the sum of $608, approving the report, and directing the trustee to execute a deed to the purchaser conveying the land to him free of liens. On the next day the trustee executed the deed as directed.

On April 17, 1925, W. H. Foster and wife filed suit in the district court of Nueces county, Tex., against George A. Newgent, Frances F. Newgent, Pete Christensen, and A. L. Ray and wife. This suit was for recovery of the principal and interest due upon the $580 note and a renewal of same executed on March 24, 1924, and for foreclosure of the lien. The petition alleged that the defendant Christensen claimed an interest in the land which was inferior and subordinate to the note and lien. It appears that A. L. Ray and wife were, or had been, tenants of the land. The citation served on defendant Christensen on May 2, 1925, directed him to appear and answer at the next term of court to be held on August 3, 1925. An answer was filed for him on August 4, 1925. However, by an act of the Legislature which was approved and became effective on March 16, 1925, the time for the beginning of the terms of the district court of Nueces county was changed so that the next term after the service of the citation upon Christensen began June 8, 1925. On June 9, 1925, Newgent and wife, as defendants in that suit, filed a waiver of service, and on that day judgment was rendered in favor of the plaintiffs reciting the default of the defendant Christensen and of the Rays and foreclosing the lien. At the sheriff's sale the land was bought by W. H. Foster and wife.

The instant suit was filed in the district court of Nueces county on August 25, 1925, by defendant in error Christensen against plaintiffs in error Mrs. Loula Foster, Mrs. L. M. Decker, Frances F. Newgent, and George A. Newgent, and also against A. L. Ray and wife. W. H. Foster died, leaving his wife and his two daughters, Mrs. Newgent and Mrs. Decker, as his only heirs. The suit is to set aside the default judgment, to recover judgment for the title and possession of the land, and to remove from the title the clouds created by the claims of plaintiffs in error; it being alleged that said claims were concluded by the orders of the bankrupt court and the sale made thereunder free from liens.

Plaintiffs in error in their answer resisted the effort to set aside the default judgment and repleaded their claims of interests in the land, alleging that the land was the separate property of Mrs. Newgent by reason of the payment by her out of her separate funds of the cash consideration when the land was conveyed to her and her husband and the agreement of all parties to the transaction that the remaining payments should be made by Mrs. Newgent out of her separate funds. They further alleged the execution of the $580 note, the retention of the lien securing it, the renewal of the debt, default in its payment, and the right of Mrs. Foster, Mrs. Newgent, and Mrs. Decker to foreclose the lien. With reference to the proceedings in bankruptcy, the answer alleged that the bankrupt George A. Newgent owned no interest in the land, that Mrs. Newgent and W. H. Foster and wife were not parties to the bankruptcy proceedings, were served with no notice of any of the proceedings, and were not bound by the same, that prior to his purchase of the land notice was given to defendant in error of Mrs. Newgent's ownership, and that neither the interest of Mrs. Newgent nor the lien owned by Foster and wife was affected by the proceedings and sale in bankruptcy. The answer alleged that following the default judgment in the district court of Nueces county the land was purchased at sheriff's sale by Mr. and Mrs. Foster, and afterwards conveyed by them to Mrs. Decker. The prayer is that defendant in error take nothing by the suit, that Mrs. Decker or Mrs. Newgent be adjudged to be the owner of the land, and that judgment be rendered on the $580 note as renewed and for foreclosure of the lien securing it.

The trial court sustained demurrers to practically all of the answer except that part of the same alleging Mrs. Newgent's separate ownership of the land, the execution of the $580 note, the retention of the lien securing it, and its renewal. All evidence offered by plaintiffs in error for the purpose of proving Mrs. Newgent's separate ownership of the land, notice to defendant in error of such claim, and that plaintiffs in error were not notified of and did not appear in the proceedings in bankruptcy, was excluded, and judgment was rendered for defendant in error following an instructed verdict. The Court of Civil Appeals affirmed the judgment of the trial court, apparently, as shown by its opinion on motion for rehearing, upon the sole ground that the claims asserted by plaintiffs in error were in effect a collateral attack upon the orders of the court of bankruptcy which could not be entertained. 42 S.W.(2d) 460.

A careful consideration of the nature of the wife's separate property and of the rule against collateral attack leads us to a different conclusion.

The land, of course, presumptively became the community property of Mr. and Mrs. Newgent when it was conveyed to them jointly with no recital of her separate ownership; but her ownership of the land as her separate property would have been established by proof of the allegations in the answer that the cash payment was made out of her separate funds and that it was agreed at the time by the parties to the deed that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds. The effect of such proof would not be altered by the fact that the husband joined in the promise to pay the balance of the purchase money. See McClintic v. Midland Grocery & Dry Goods Co., 106 Tex. 32, 154 S. W. 1157; Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S. W. 860; Carter v. Bolin (Tex. Civ. App.) 30 S. W. 1084; Speer's Law of Marital Rights (3d Ed.) §§ 428–429.

When the wife's separate funds are used to pay but part of the purchase price of land acquired by the husband and wife during marriage, she has, in the absence of a different intention, an interest or equity in the land in proportion to such payment by her. The wife's separate ownership of property, although standing in the name of her husband or appearing on record to be community property, may be proven as any other fact by any competent evidence, including parol evidence, surrounding circumstances, and declarations of the parties. See the authorities last above cited and Cummins v. Cummins (Tex. Civ. App.) 224 S. W. 903; Speer's Law of Marital Rights (3d Ed.) §§ 406, 428, 429, 437.

Her ownership of separate property is a separate and individual ownership, and not merely a claim or inchoate right. In Read v. Allen, 56 Tex. 182, 193, it is said: "With us, husband and wife, as regards their personal property, unless when otherwise provided by statute, are separate and distinct persons in law." That case holds that a wife not actually a party to a suit is not bound by the judgment rendered in the suit even though her husband is a party, for the reason that the presence of her husband as a party to the suit does not make the wife constructively a party.

Judgment of foreclosure and sale in a suit against the husband when the land is the separate property of the wife does not affect her title and does not estop her. Williamson v. Conner, 92 Tex. 581, 50 S. W. 697; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242, 243. In the opinion in the case last cited, Judge Gaines said: "A judgment against him in a suit to recover property belonging to her in her own right, to which she is not a party, does not bind her."

Even though the title to the land was taken in the name of her husband, if it in fact is

250

the wife's separate property, her title cannot be affected by any disposition made of it by her husband's will. Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705. Judge Speer, speaking of the nature of the wife's separate property, says: "Her estate is separate in the sense that it belongs to her rather than to her husband, the community or any other person." Speer's Law of Marital Rights (3d Ed.) § 399.

A writ of error was refused in the case of Citizens' State Bank v. Jeffries (Tex. Civ. App.) 2 S.W.(2d) 317, in which the court held that a wife is not a party to proceedings in bankruptcy against her husband, and that his wrongful designation in such proceedings of property as homestead, other than the true homestead, will not estop her from claiming the true homestead.

Since the wife's ownership of separate property is a separate, distinct, and independent ownership, Mrs. Newgent was not bound by the proceedings in bankruptcy (if in fact the land or an interest in it was her separate property) unless she was a party to such proceedings; and if she was not a party to them, the rule against collateral attack has no application to her.

In State Mortgage Corporation v. Traylor, 120 Tex. 148, 36 S.W.(2d) 440, 443, Chief Justice Cureton, in discussing the effect of a judgment upon strangers to the judgment, said: "The rule is an elementary one that strangers to a judgment, that is, those who are not parties or privies to the proceeding, may, when their interests are adversely affected by the judgment, impeach it whenever it is attempted to be enforced against them. They may not, of course, avoid it for a mere error or irregularity, but they may collaterally attack it where it is void as to the party making the attack for want of jurisdiction, as in this case." (Citing authorities.) See, also, Murchison v. White, 54 Tex. 78.

The following statement appears with citation of a number of cases in 25 Texas Jurisprudence, pp. 681–685:

"It is clear from what is said above, that the rule which makes a judgment that is not absolutely void immune to collateral attack, applies only to persons who were either actual or constructive parties to the action, and to their privies, and not necessarily to strangers. * * *

"It follows that when one who has an interest in the subject matter of an action to which he was not made a party finds that he suffers injury by the judgment rendered, he may assail it collaterally in so far as it is prejudicial to him. Thus any person having an interest in land—such as an owner, a cotenant, or a person in lawful possession—who was not made a party to a suit involving the land, may collaterally assail the judgment rendered therein whenever he deems it proper to do so."

There are many decisions holding that the rights of persons owning interests or equities in property and who are not parties to the proceedings in bankruptcy are not affected by orders of the court of bankruptcy with respect to such property or by its sales of such property. These decisions are based not only on the well-settled principle that a stranger to a judgment is not bound by it, but also on the rule that the trustee in bankruptcy acquires no better title, and therefore can pass no better title, than that of the bankrupt owner as of the date he was adjudged a bankrupt. The trustee is in no sense an innocent purchaser. See Roby v. Colehour, 146 U. S. 153, 13 S. Ct. 47, 36 L. Ed. 922; Zartman v. First National Bank of Waterloo, 216 U. S. 134, 30 S. Ct. 368, 369, 54 L. Ed. 418; Dioguardi v. Curran (C. C. A.) 35 F.(2d) 431; In re Platteville Foundry & Machine Co. (D. C.) 147 F. 828; Renick & Frazier v. Dawson, 55 Tex. 102.

Section 70a of the Bankruptcy Act (11 US CA § 110(a) thus defines the property of the bankrupt that passes to the trustee: "Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." This definition does not include the wife's separate property.

In Zartman v. First National Bank of Waterloo, supra, it is held that notwithstanding the intervention of bankruptcy, a party to a written contract may correct as against the trustee an error in the contract resulting from mutual mistake, or, in other words, that the advantage to the bankrupt in a mistaken contract is not an asset in the hands of the trustee, and that the trustee does not take as an innocent purchaser. In so holding the court said: "The rule applicable to this and all similar cases is that the trustee takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens, and equities."

Dioguardi v. Curran, supra, holds that property owned by the bankrupt and his wife as tenants by the entireties does not pass to the trustee in bankruptcy, because under the law of the state where the property is situated neither spouse can dispose of any part of the estate by entireties without the consent of the other, and neither has such interest in the property as can be subjected to the lien of a judgment or sold under an execution.

In Roby v. Colehour, supra, the legal title to land was held by the bankrupt Roby, but the two Colehours, by reason of contracts, were the owners of interests or equities in the land. It was held that a sale of the land by the court of bankruptcy did not divest the Colehours of their interests or equities. In

the case of In re Muhlhauser (C. C. A.) 121 F. 669, persons claiming an undisclosed interest in land which had been sold by the court of bankruptcy free of liens sought to file a petition in that court for the purpose of setting aside the sale. The court refused to permit the petition to be filed, on the ground that if such persons had an interest in the land it was not affected by the sale, and their proper remedy was a suit in district court against the purchaser and all interested parties. The case of Brown v. Brown, 172 Ky. 754, 189 S. W. 921, holds that a wife who in pending proceedings in the state court has been awarded a homestead right in land is not a party to proceedings in bankruptcy against her husband, and that her homestead right in the land was not affected by a sale of the land in the court of bankruptcy.

The wife's right of dower, because it is no part of the estate of her husband, does not pass to a purchaser of the land on its sale by the court of bankruptcy, unless she consents to a sale free of her right of dower. Porter v. Lazear, 109 U. S. 84, 3 S. Ct. 58, 27 L. Ed. 865; Kelly v. Minor (C. C. A.) 252 F. 115; In re Macklem (D. C.) 28 F.(2d) 417; Nelson v. Dunn, 215 Ky. 292, 284 S. W. 1084; Remington on Bankruptcy (3d Ed.) § 2586.

■ The filing of schedules by a bankrupt is an ex parte proceeding and binding upon the bankrupt as an admission, but it is not res adjudicata, and the listing by the bankrupt of debts or property in the schedules is not binding upon one not a party to the proceedings. Horner v. Hamner (C. C. A.) 249 F. 134.

■ Since the wife's separate property or interest is equitable in its nature when the title appears of record to be in the community, she may lose her title through its acquisition from the husband by an innocent purchaser for value. Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Speer's Law of Marital Rights (3d Ed.) §§ 439, 448, and cases cited.

■■ From the foregoing authorities and the rules announced by them it necessarily follows, in our opinion, that Mrs. Newgent was not a party to the proceedings in bankruptcy merely because she was the wife of the bankrupt; that if she was not in fact a party to the proceedings under which the land was sold, the purchaser acquired only such title as her husband had, and not the title that she may have separately owned, provided of course the purchaser was not a purchaser for value without notice of her claim of title; and that proof by her of her ownership of the land, or an interest in it, as her separate property, she not being a party to such proceedings, would not violate the rule against collateral attack.

Aside from the authorities which have been discussed at some length as supporting the conclusion that plaintiffs in error, if not parties to the proceedings in bankruptcy, are not precluded by the rule against collateral attack from asserting the interests claimed by them, the case of John v. Battle, 58 Tex. 591, in which there was a state of facts practically identical with those in the instant case, is decisive of the right of the wife by suit against the purchaser to recover her separate interest in land scheduled and sold as belonging to the bankrupt husband unless the purchase was made without notice of her interest. There the land was purchased by the husband and conveyed to him, but he used separate funds of the wife to make part of the cash payment. Afterward he went into bankruptcy and scheduled the land as his property and it was sold at public auction by the assignee in bankruptcy, and bought with notice of the wife's claim of interest. A judgment awarding the wife against the purchaser an undivided interest in the land in proportion to the amount of her separate funds used in its purchase was affirmed. The grounds of the decision of the court are thus stated in the opinion: "The assignment in bankruptcy by her husband did not have the effect to pass any greater interest in the land than was owned by him as his separate property, and that which he held in community with his wife. Her rights in the land in virtue of her separate estate were not affected by virtue merely of the bankrupt proceedings against her husband, and the purchasers under the bankrupt sale did not acquire her interest, unless they did so as purchasers without notice of the existence of that interest. The assignee in bankruptcy sold only such right or title to the property as was vested in him as the representative of the bankrupt, and he sold it subject to such rights of others, or of incumbrances upon it, as existed at the time of the sale. Ray. v. Norseworthy, 23 Wall. (U. S.) 136 [23 L. Ed. 116]. It is said by Judge Clifford in that case, that there is no well considered case which gives any support to the proposition that the judgment, order, sentence or decree of a court disposing of property subject to conflicting claims will affect the rights of any one not a party to the proceeding and who was never in any way notified of the pendency of the proceeding."

While it is true that the opinion in the case last referred to makes no reference in so many words to the rule against collateral attack, the court necessarily holds in affirming the judgment of the trial court, and as is apparent from the portion of the opinion above quoted, that the rule is not applicable, because the wife was not a party to the proceedings in bankruptcy.

■ Defendant in error contends that the court of bankruptcy by its order with reference to the claim of homestead made by the bankrupt determined against Mrs. Newgent her claim of separate ownership, and that a recital of that order proved that she was a

party to the proceeding in which it was entered. The order, however, does not undertake to determine whether the land was community or separate property. It merely rejects the bankrupt's claim that the land was exempt as his homestead, and adjudges that as against such claim the land is subject to the payment of the claims of creditors. The recital of notice in the order is that notice was issued and mailed "to the creditors and other interested parties." This is not a recital that Mrs. Newgent was notified of, or appeared at, the hearing. The order does not even recite that *all* interested parties were notified.

 The further contention is made that the trustee in bankruptcy had actual possession of the land, and that the court of bankruptcy because of such possession had jurisdiction of the property and could dispose of the interests or claims of plaintiffs in error without notice to them. There is no evidence in the record, and there are no allegations in the pleadings of plaintiffs in error, that the trustee had actual possession of the land. Furthermore, while actual possession of property by a court of bankruptcy through its officers as a rule gives to such court exclusive jurisdiction to hear and determine all questions respecting the title to the property, such court may not, in exercising even its summary jurisdiction existing on account of such possession, determine the claims or titles of adverse parties without giving them notice and an opportunity to be heard. In re Ellis (D. C.) 1 F.(2d) 341; In re E. A. Kinsey Co. (C. C.A.) 184 F. 694; Remington on Bankruptcy (3d Ed.) §§ 2399, 2406, 2408.

It follows that the trial court erred in sustaining exceptions to the pleadings and in excluding evidence offered with respect to Mrs. Newgent's claim of separate ownership, the payments made by her on the purchase price of the land, the want of service upon her, her nonappearance as a party in the proceedings in bankruptcy, and notice to defendant in error of her claim of ownership.

Facts might possibly have existed which would have estopped Mrs. Newgent from asserting her claim of separate ownership against defendant in error, but defendant in error did not plead or prove facts sufficient so to estop her. See John v. Battle, 58 Tex. 591; In re Torchia (C. C. A.) 188 F. 207; In re Jacobson (C. C. A.) 4 F.(2d) 211; Speer's Law of Marital Rights (3d Ed.) §§ 271–275, 277.

 Most of the rules and authorities which have been stated and cited are also applicable to the question whether the owners of the $580 note may foreclose their lien in this suit. There is nothing in the record to indicate that Mr. and Mrs. Foster, the owners of the note, were notified of the hearing in which the referee in bankruptcy ordered the sale free from liens or that they in any way consented to such sale or accepted in lieu of their lien upon the land the proceeds or a part of the proceeds of the sale. Under such state of facts, their lien was not affected by the sale by the court of bankruptcy, and they had the right to foreclose it (if the debt and lien were not barred by limitation) in a suit in the state court against the purchaser. Although listed as creditors, they were not required to seek collection of their debt in the court of bankruptcy, but could rely upon their lien. Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; Yeatman v. New Orleans Savings Institution, 95 U. S. 764, 24 L. Ed. 589; Factors' & Traders' Ins. Co. v. Murphy, 111 U. S. 738, 4 S. Ct. 679, 28 L. Ed. 582; Adams v. Conner, 133 U. S. 296, 10 S. Ct. 304, 33 L. Ed. 623; Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645; In re Platteville Foundry & Machine Co. (D. C.) 147 F. 828; Remington on Bankruptcy (3d Ed.) §§ 2479, 2594.

 Such lienholders may be barred from asserting their liens against the purchaser by assenting to a sale free from their liens, or by accepting part of the proceeds of the sale, or by other conduct sufficient to estop them. Factors' & Traders' Ins. Co. v. Murphy, 111 U. S. 738, 4 S. Ct. 679, 28 L. Ed. 582; In re Torchia (C. C. A.) 188 F. 207; In re Jacobson (C. C. A.) 4 F.(2d) 211. There is no proof of any such acts on the part of Mr. and Mrs. Foster.

 The trial court, on objections of defendant in error, excluded evidence offered to prove the execution of the $580 note, its terms, the date of its maturity, its renewal, and the amount due upon it; one of the objections sustained being that the note was barred by limitation. The note on its face showed no certain date of maturity, but stated that it was subject to the terms of the deed from Foster and wife to Newgent and wife. That deed, which was in evidence, provided that the note was payable in yearly installments amounting each to one-fourth of the annual crops raised on the land. Evidence offered by plaintiffs in error as to the amount of the crops was excluded. Such evidence showed or tended to show that the note was not barred. The record does not sustain the trial court's ruling that the note and lien were barred by limitation, and the evidence offered with respect to the note should have been admitted.

Without evidence as to the amount and value of the annual crops raised on the land each year after the execution of the note, it is impossible to determine when the note became due, and whether the note and lien were barred by limitation. The renewal agreement should also have been admitted in evidence, as it at least tends to prove the amount due on the note.

■ As to the effect of the renewal agreement (and assuming that it may appear from the evidence on another trial that but for such agreement the note and lien were barred by limitation when this suit was filed), if the land was the separate property of Mrs. Newgent, the agreement was valid and effective to renew the lien, and defendant in error was in no way interested or affected by such renewal. If on the other hand the land was the property of the bankrupt, or community property, the bankrupt could not, by the execution of a renewal agreement after the filing of the petition in bankruptcy, prevent the trustee or creditors from pleading limitation against the note and lien; and defendant in error, as the purchaser of the land at the trustee's sale, would likewise be entitled, notwithstanding the attempted renewal by the bankrupt, to plead limitation in this suit brought to enforce the lien against him. Remington on Bankruptcy (3d Ed.) §§ 958–963, 1480. The contrary rule would permit the owner of a note secured by lien, but barred by limitation, to profit at the expense of other creditors of the bankrupt. It is to be observed also that under the present bankrupt act the running of the statute of limitations is not suspended during bankruptcy. Remington on Bankruptcy (3d Ed.) § 3497.

The record suggests, but does not definitely show, that the Federal Land Bank of Houston was the owner of notes in the total principal sum of $800, secured by a lien prior and superior to that securing the $580 note. No evidence was offered indicating that the trustee's sale was in fact free of the lien securing the notes owned by the bank; that is, no evidence that the bank was a party to the proceedings in bankruptcy or was notified of the intention to sell the land free from its lien or accepted the proceeds of the sale. In the absence of these facts, the effect, if any, upon the lien securing the $580 note of a sale free from the lien securing the notes owned by the bank, is not presented for determination.

■ Evidence offered by Mrs. Newgent of payments made by her to the bank out of her separate funds prior to the trustee's sale should have been admitted as tending to prove her claim of separate ownership of the land, or of an interest in it.

On another trial, under proper pleadings and in order to adjust equities, evidence should be admitted as to payments which may have been made in good faith by any of the parties upon any debt secured by a prior existing lien or for taxes, and by which payments the true owner of the land must necessarily have been benefited.

■ It is our opinion that the trial court correctly set aside the default judgment without submitting to the jury the question whether the defendant in error had a reasonable excuse for not appearing and defending in the suit filed April 17, 1925. The citation commanded defendant in error to appear and answer on August 3, 1925, which would have been the first day of the next term of court but for the act of the Legislature which went into effect March 16, 1925, and by the provisions of which the next term of the district court of Nueces county after the suit was filed began the twenty-second Monday after the first Monday in January, which was June 8. Acts Reg. Sess. 39th Leg., 1925, ch. 79, p. 243, § 1. The change was in effect, therefore, when the suit was filed and the citation did not, as article 2022 of the Revised Civil Statutes requires, state the time of holding the next regular term of court, and direct the defendant to appear and answer at that time, but it directed him to appear and answer some two months later. Such citation is insufficient to support a default judgment. Wyman v. American Mortgage Corp. (Tex. Civ. App.) 45 S.W.(2d) 629; Pruitt v. State, 92 Tex. 434, 49 S. W. 366.

■ Even if the change in the time for the beginning of the term had been made after the filing of the suit and the issuance of citation, we think the evidence was sufficient as a matter of law to excuse defendant in error for his failure to appear and answer at the term beginning June 8. See Queiroli v. Whitesides (Tex. Civ. App.) 206 S. W. 122; Meckel v. State Bank of Barksdale (Tex. Civ. App.) 256 S. W. 668; Ramirez v. Martinez (Tex. Civ. App.) 208 S. W. 380. He had been served with a citation stating that the next term of court began August 3, and commanding him to appear and answer then. He was a well driller living in another county. He testified that he had no information as to the change in the law until a few days before this suit was filed. If his undisputed testimony must be corroborated because he is a party, the citation itself, and the fact that an answer in his behalf signed by two attorneys at law was filed on August 4th, afford sufficient corroboration.

We recommend that the judgment of the Court of Civil Appeals and that of the trial court be reversed and the cause remanded for trial in accordance with this opinion.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.